**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO F. PEREZ, | No. C 04-5014 SI (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| W.A. DUNCAN, warden, | |
| Respondent. | |

**INTRODUCTION**

Ricardo Perez ("Perez"), a California prisoner, filed a pro se habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his 2002 conviction in Santa Clara County Superior Court. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer, and Perez filed a traverse. This court will deny his petition on the merits.

# BACKGROUND[1]

A. <u>The Crimes</u>

Perez was convicted of numerous sexual assaults against Arlynn and Adrianna, two children under the age of 14. At trial, the prosecution also introduced evidence of uncharged sexual crimes against a third child, Anita.

In 1991, Perez became friends with the brother of five year old Arlynn. Perez began visiting Arlynn's home almost daily, and her family soon treated him like a brother and a son. When Arlynn entered kindergarten, Perez began molesting her. He grabbed her lewdly and rubbed her private parts, made her touch his penis, and forced intercourse on her. Perez capitalized on instances during which Arlynn's family had left the room or turned their backs to accost her. Arlynn estimated that, over the course of seven years, Perez molested her over one hundred times. She testified that Perez "penetrated her with his penis 10 or 15 times, with his finger around 15 times, and rubbed the outside of her vagina many times." Cal. Ct. App. Opinion at 3. The last incident occurred when she was twelve.

In May of 2001, Arlynn finally told her family members about Perez's behavior, and they promptly informed the police. Arlynn provided the police with a recorded statement, similar to her trial testimony, detailing the incidents of sexual assault. The prosecution introduced the statement at trial. During police-monitored calls from Arlynn's mother to Perez, he admitted having touched and molested Arlynn. He also confessed directly to the police to having molested Arlynn. However, he gave inconsistent accounts of the frequency with which the molestations occurred.

In 1995, Perez had a daughter, Adrianna. One year later, Perez and Adrianna's mother broke up, and Adrianna commenced visiting her father on alternate weekends and holidays. At around the age of 5 or 6, Adrianna became clingy and disobedient, and complained that she didn't want to visit her father. When Adrianna's mother learned that the police had arrested Perez for child

---

[1] This background is derived from the petition, the answer and the opinion of the California Court of Appeal, <u>People v. Perez</u>, No. H025230, Cal. Ct. App. Opinion 1, 1-7 (Cal. Ct. App. Apr. 28, 2004) (hereinafter "Cal. Ct. App. Opinion").

molestation, she asked Adrianna if Perez had ever touched her. Adrianna admitted that Perez had "sexed" her. Cal. Ct. App. Opinion, p. 5. She reported that her father had penetrated her vagina with his fingers and his penis and put his penis in her rectum. She repeated her account to the police in a videotaped interview, indicating that Perez had either fondled her or had intercourse with her every time she visited him. She testified similarly during both a preliminary hearing and at trial. At one point, she estimated Perez had molested her one hundred times, though she could not always recall the number of occurrences. The prosecution introduced both the videotape and preliminary hearing evidence at trial.

Adrianna's cousin Anita testified at trial regarding Perez's uncharged sex offenses. Her testimony was allowed pursuant to California Evidence Code section 1108, which permits admission of evidence of an accused's prior sexual misconduct to establish a propensity for sexual assault. Anita stated that Perez, a friend of her brother's, had molested her when she was about seven or eight years old. She testified that, over the period of a year, Perez touched her almost every time he came to her house, about once per month.

Other evidence introduced at trial included the following: an expert on the child sexual abuse accommodation syndrome testified to explain children's behavioral reactions regarding disclosure of molestation; a physician's assistant who had examined Adrianna testified about the examination and stated that she had found no definitive evidence of penetration, although she did not find this significant because sexual assaults did not always leave evidence of trauma; and Perez's family members testified to Perez's apparent lack of sexual interest in Adrianna and her apparent happiness when visiting her father. Cal. Ct. App. Opinion, p. 6.

B.   Procedural History

The District Attorney charged Perez with multiple counts of sex crimes against Arlynn and Adrianna. Prior to the trial on the sex crimes, the court held a trial to determine whether Perez was competent to stand trial. The jury found him competent. At the trial on the criminal charges, the jury found Perez guilty of sixteen counts of lewd acts by force on a child under 14, six counts

of aggravated sexual assault on a child under 14, and three counts of misdemeanor assault.  See Cal. Penal Code §§ 288(b), 269, 240.  Perez received a total prison sentence of 225 years to life. The California Court of Appeal affirmed the conviction in all respects.  The California Supreme Court denied review.

Perez subsequently filed this habeas action.  Perez alleges four claims in his petition: (1) the exclusion of evidence of his mental retardation violated his rights to due process and to present a defense, (2) the admission of evidence under California Evidence Code section 1108 regarding acts he committed before its enactment violated his rights under the Ex Post Facto Clause, (3) the admission of section 1108 evidence of uncharged prior sex offenses violated his rights to due process and a fair trial, and (4) the use of pattern jury instruction CALJIC 2.50.01 at his trial violated his right to due process because it lessened the prosecutor's burden of proof.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged conviction occurred in Santa Clara County, California, which is located within this judicial district.  28 U.S.C. § 2241(d).

## STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus submitted by an individual in custody pursuant to a state court judgment only if the custody violates the United States Constitution, laws or treaties.  28 U.S.C. § 2254(a) (2005); Rose v. Hodges, 423 U.S. 19, 21 (1975).  A district court may not grant a petition challenging a state conviction or sentence unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2005); Williams v. Taylor, 529 U.S. 362, 402-403 (2000).

A state court decision qualifies as "contrary to" federal law if it directly contravenes a Supreme Court decision on a question of law, or reaches a conclusion converse to a Supreme Court decision with materially indistinguishable facts. Williams, 529 U.S. at 413. A state court decision involves an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-413. In determining whether a state court's decision contravenes or unreasonably applies clearly established federal law, a federal court examines the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). In this case, the highest state court to issue a reasoned opinion was the California Court of Appeal.

## EXHAUSTION

Prisoners in state custody who seek federal habeas relief must first exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they intend to raise in federal court. See 28 U.S.C. § 2254(b)-(c). The parties do not dispute that Perez exhausted state court remedies for claims in this petition.

## DISCUSSION

A. Exclusion Of Evidence Regarding Perez's Mental Retardation

Perez contests the exclusion of evidence relating to his mild mental retardation. He suggests that the evidence would have established that he lacked the aptitude to commit the number

of offenses charged.[2] During the competency trial, Perez's attorney presented expert testimony on Perez's borderline mental retardation. Cal. Ct. App. Opinion at 14. The jury also considered evidence indicating that Perez led a normal life; he graduated from high school, took college classes, interacted normally with others, followed directions, spoke fluent English and Spanish, and drove a car. Id. The jury found Perez competent to stand trial. Id. at 1. After he was found competent to stand trial, a separate trial was held on the criminal charges against him.

During his opening statement at trial on the criminal charges, the defense attorney informed the jury that it would hear evidence regarding Perez's mental defects. Id. at 14. The prosecutor objected to the admission of the mental retardation evidence. Id. at 15. During bench conferences discussing the prosecutor's objections, the judge indicated that Perez could present the evidence to prove lack of specific intent. Id. at 15. Perez's attorney, however, stated that he wanted to offer the evidence not to disprove specific intent, but to show that Perez lacked the ability to plan and carry out all the crimes of which he had been accused. Id. at 15.[3] The prosecutor replied that the charged crimes did not require master planning, stating "'[i]t is as simple as him grabbing or pulling someone into a room.'" Id. The trial court sustained the prosecution's objections but stated that the evidence could be admitted as to specific intent. Later, during the presentation of evidence, the defense attempted to introduce evidence about Perez's limited intellect, but the court sustained

---

[2] In his traverse, Perez tries to expand the scope of his argument. In addition to the original claim – that the evidence was relevant to his defense – Perez appears to suggest that his mental retardation showed he was incompetent to commit the crime or to stand trial. Assuming arguendo Perez has attempted to assert claims of actual incompetence at trial and the time of the offense, he could not obtain the writ on these claims because he has not exhausted state court remedies. See 28 U.S.C. § 2254(b)(2). Even if the claims had been exhausted, showing mental retardation of the level Perez experienced would not present a colorable claim of incompetence at the time of trial or at the time of the offenses, because the test is one of competence, which is not identical to the absence of mental retardation. "Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial." Atkins v. Virginia, 536 U.S. 304, 318 (2002). Moreover, a jury examined Perez's competency and found him competent to stand trial.

[3] Although the child-victims asserted that Perez had committed lewd acts hundreds of times, the indictment did not allege hundreds of counts of lewd acts. Rather, the indictment charged Perez with 16 counts of lewd acts by force on a child under 14 (13 counts for Arlynn and 3 for Adrianna) and 9 counts of aggravated sexual assault on a child under 14 (5 counts for Arlynn and 4 for Adrianna).

1 the prosecution's same objections made earlier.

2 In evaluating the exclusion of Perez's mental retardation evidence, the California Court of Appeal determined that, due to the evidence's limited probative value, its exclusion did not violate Perez's constitutional rights to present a defense. Cal. Ct. App. Opinion at 16-17. The appellate court also found that, even if the exclusion had been an error, it would have been harmless beyond a reasonable doubt. See id. at 17 (citing Chapman v. California, 386 U.S. 18 (1967)). Evidence had already been presented from which the jury could infer Perez possessed a limited intellect. Id. Perez's friendship with Arlynn's brother, a boy much younger than Perez, indicated he wasn't functioning at the usual teenage or adult level. Id. Additionally, persuasive evidence inculpated Perez. Perez's own admissions showed that "however limited [his] intellect might be, he was capable of committing, and did commit, furtive sex crimes" against Arlynn. Id. Also, testimony from his mother showed that he had ample opportunities to molest Adrianna as she had slept alone with Perez. Id.

The Sixth Amendment guarantees criminal defendants the right to present a defense. Chambers v. Mississippi, 410 U.S. 284, 294 (1973). However, a district court may not collaterally review a state court evidentiary ruling unless it violates federal law, either by violating a specific constitutional provision or by infringing upon the due process right to a fair trial. Pulley v. Harris, 465 U.S. 37, 41 (1984). Exclusion of evidence does not contravene due process unless "'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (citation omitted). In evaluating whether the exclusion of evidence offends constitutional rights, a court assesses the probative value, reliability, and comprehensibility of the excluded evidence, whether the evidence is cumulative, and whether it constitutes a significant portion of the attempted defense. Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004). The court also must consider the state interests underlying the evidentiary rules. Id. at 1006. If exclusion of the evidence amounted to constitutional error, the erroneous exclusion must have had "a substantial and injurious effect" on the verdict to justify federal habeas relief. Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).

Balancing the factors enumerated in Chia permits the conclusion that exclusion of Perez's mental retardation evidence did not violate his due process or Sixth Amendment rights. Chia, 360 F.3d at 1004. The state has an obvious interest in restricting irrelevant evidence. The evidence offered here would not have played a central role in Perez's defense, as it sought to rebut a theory not asserted by the prosecution. Cal. Ct. App. Opinion at 15. Moreover, other evidence illustrated Perez's limited intellectual capacity. Id. at 17. Finally, the evidence had very little probative value, as Perez's attorney had offered it to prove absence of a master plan, but no master plan had been asserted and no master plan was necessary to establish Perez's guilt on the charges of forcible lewd acts, aggravated sexual assault, and misdemeanor assault. Because a court could reasonably conclude that these factors outweigh the apparent reliability and understandability of the evidence, its exclusion did not violate Perez's due process and Sixth Amendment rights.

Even if the exclusion of evidence infringed upon Perez's constitutional rights, habeas relief would only be appropriate if the exclusion had "substantial and injurious effect" on the verdict. Brecht, 507 U.S. at 623. The California Court of Appeal applied a harmless error analysis to determine that exclusion of Perez's evidence did not substantially influence his conviction. Cal. Ct. App. Opinion at 17. On collateral review, a federal court should evaluate whether the state court's harmless error analysis was objectively unreasonable. Medina v. Hornung, 386 F.3d 872, 878 (9th Cir. 2004). In this case, the California Court of Appeal's harmless error analysis does not appear objectively unreasonable. The breadth of evidence against Perez, such as the victims' testimony and Perez's own admissions, show convincingly that the jury would have convicted him despite any evidence of impaired mental capacity. The evidence of Perez's limited mental intellect to show an inability to plan or execute repeated molestations undetected would not have been credited in light of the evidence that Perez admitted in recorded telephone call with Arlynn's mother to having committed about 12-15 lewd acts against Arlynn and admitted in an interview with police several dozen lewd acts against Arlynn. His description of the events to police indicated that he was mindful to avoid detection when he engaged in his lewd acts. See Cal. Ct. App. Opinion, p. 4. In other words, evidence that Perez wasn't theoretically smart enough to

engage in so many lewd acts undetected would not have swayed a jury that also heard Perez's own admissions that he had in fact engaged in many lewd acts, even though he had admitted dozens of lewd acts rather than hundreds of lewd acts, and had done them secretively.

The California Court of Appeal's decision was not an unreasonable application of, or contrary to, clearly established federal law. The decision cited an appropriate Supreme Court decision regarding a criminal defendant's constitutional right to a meaningful opportunity to present a complete defense. Cal. Ct. App. Opinion, p. 16 (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). The court's application of clearly established federal law was reasonable. Perez therefore is not entitled to relief on this claim.

B. Admission of Propensity Evidence Under California Evidence Code § 1108

At trial, the prosecution introduced evidence of Perez's prior sexual offenses against Anita, who testified that Perez had molested her when she was about 7-8 years old, almost every time he came to her house to visit her brother – about once a month for a year. Perez asserts that the admission of evidence of his prior uncharged sex offenses under California Evidence Code section 1108 violated his constitutional right to be free from ex post facto laws and his constitutional rights to due process and a fair trial.

California Evidence Code section 1101 provides, in relevant part: "(a) Except as provided in this section and Section[] . . . 1108, . . . evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion."

California Evidence Code section 1108(a), states, in relevant part, that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

California Evidence Code section 352 permits the court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the

issues, or of misleading the jury."

### 1. Ex Post Facto Claim

Perez contends that California Evidence Code section 1108 was an ex post facto law that could not be applied to him. Section 1108 became effective on January 1, 1996, and section 1108 evidence was used to convict him of ten counts of committing lewd acts on Arlynn that occurred in 1991-1995, and therefore predated section 1108.

The U.S. Constitution provides that "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts. . . ." U.S. Const., Art. I, § 10. In Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798), Justice Chase gave the classic description of ex post facto laws:

> I will state what laws I consider ex post facto laws, within the words and intent of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. <u>4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.</u>

3 Dall. at 390 (emphasis added); see Carmell v. Texas, 529 U.S. 513, 537-39 (2000) (fourth Calder category remains valid).

The fourth Calder category prohibits both laws that lower the burden of proof and laws that reduce the quantum of evidence necessary to meet that burden. Cf. Carmell, 529 U.S. at 541. However, it does not mean that a state may not make any change to laws of evidence. For example, a change in a witness competency rule did not violate the Ex Post Facto Clause; the changed rule did not always run in favor of the state and did not necessarily affect, let alone subvert, the presumption of innocence. See Carmell, 529 U.S. at 533 n.23, 546. "The issue of the admissibility of evidence is simply different from the question whether the properly admitted evidence is sufficient to convict the defendant. Evidence admissibility rules do not go to the general issue of guilt, nor to whether a conviction, as a matter of law, may be sustained." Id. at

546; see also Hopt v. Territory of Utah, 110 U.S. 574, 589-90 (1883) ("Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not ex post facto in their application to prosecutions for crimes committed prior to their passage, for they do not . . . alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed").

In analyzing Perez's claim, the California Court of Appeal set forth the appropriate federal standard, listing the four categories of ex post facto laws, identifying the fourth Calder category as the category at issue and applying the leading Supreme Court case of Carmell to Perez's case. The state court determined that section 1108, while adding to the pool of evidence which the jury could consider, did not lessen the prosecution's burden to prove Perez's guilt beyond a reasonable doubt. Cal. Ct. App. Opinion at 9 (citing People v. Fitch, 55 Cal. App. 4th 172, 186 (1997)). The appellate court also compared section 1108 to the statute at issue in Carmell v. Texas, upon which Perez's argument relied. Cal. Ct. App. Opinion, pp. 9-10. The defendant in Carmell, like Perez, had been accused of molestation, and asserted that a recently amended law violated the ex post facto prohibition. Carmell, 529 U.S. at 516. Texas had amended the disputed law, which had previously prohibited sexual assault convictions upon the victim's uncorroborated testimony, unless the victim had informed someone of the assault within six months, to authorize conviction on the victim's testimony alone. Id. at 516-517. By decreasing "the minimum quantum of evidence required to obtain a conviction," the law violated the ex post facto prohibition. Id. at 534. Carmell noted that ordinary rules of evidence, unlike the Texas law at issue, do not violate the Ex Post Facto Clause, because the question of evidence admissibility differs entirely from whether admitted evidence suffices to permit a conviction. Carmell, 529 U.S. at 1638-1640. The California Court of Appeal construed section 1108 as a law of evidence admissibility as opposed to a rule that determined whether admitted evidence suffices to permit a conviction. Section 1108 merely increases the stock of admissible evidence and does not lower the required "quantum of evidence" or reduce the prosecution's burden of proof. Cal. Ct. App. Opinion, p. 10

Section 1108 was enacted after several of the crimes occurred. However, it did not lower

the burden of proof for the prosecution or change the quantum of evidence necessary to convict. The statute permitted the jury to consider additional relevant evidence that was not excluded under section 352 in determining whether the prosecution had met its burden of proof. Perez has not shown that section 1108, on its face or as applied in his case, altered the burden of proof of the amount of evidence necessary to convict. Section 1108 changed evidence admissibility rules, but that was permissible under Carmell and did not run afoul of the Ex Post Facto Clause.

The California Court of Appeal's rejection of the ex post facto claim was not "contrary to" nor "an unreasonable application of" federal law. 28 U.S.C. § 2254(d)(1). Perez is not entitled to the writ on this claim.

  2.  Due Process Claim

A state's criminal law (such as an evidence law pertaining to criminal trials) does not violate the Fourteenth Amendment's Due Process Clause "'unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (citation omitted). "It is not the State which bears the burden of demonstrating that its rule is deeply rooted, but rather [the criminal defendant] who must show that the principle of procedure violated by the rule (and allegedly required by due process) is so rooted in the traditions and conscience of our people as to be ranked as fundamental." Id. at 47 (citation and internal quotations omitted; emphasis in original) (rule that intoxication may be considered on the question of intent was not so deeply rooted as to be a fundamental principle enshrined by the Fourteenth Amendment). But simply finding a historical basis for or against a rule is not enough: "The Constitution does not encompass all traditional legal rules and customs, no matter how longstanding and widespread such practices may be. The Supreme Court has cautioned against the wholesale importation of common law and evidentiary rules into the Due Process Clause of [the] Constitution" United States v. LeMay, 260 F.3d 1018, 1024-25 (9th Cir. 2001), cert. denied, 534 U.S. 1166 (2002).

No published federal appellate court decision has yet reached the constitutionality of

California Evidence Code section 1108.  However, section 1108 is analogous to Federal Rule of Evidence 414, which governs the admissibility of prior conduct evidence in child molestation cases in federal court.  The Ninth Circuit has rejected due process and equal protection challenges to Rule 414, and its reasoning guides this court's consideration of the very similar California law.  See LeMay, 260 F.3d at 1024, 1030.  Rule 414 states that "evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."  Fed. R. Evid. 414.  Rule 414 does not violate due process because Rule 403 (the federal analog to California Evidence Code section 352) functions as a filter, resulting in the exclusion of evidence that is so prejudicial as to deprive the defendant of his right to a fair trial.  Id. at 1026.  In other words, the "application of Rule 403 to Rule 414 evidence eliminates the due process concerns posed by Rule 414."  LeMay, 260 F.3d at 1027 (quoting United States v. Castillo, 140 F.3d 874, 881 (10th Cir. 1998)).

California Evidence Code section 1108 functions in a similar fashion to Federal Rule of Evidence 414.  Section 1108 allows for the introduction of evidence of prior sex offenses by a defendant accused of a sex offense and is subject to section 352 which excludes unduly prejudicial evidence.  Like Rule 414, section 1108 does not pose a due process concern because the section 352 filter does not allow the admission of section 1108 evidence which is so prejudicial as to preclude the right to fair trial guaranteed by the Due Process Clause.  Perez has not shown "that the traditional ban on propensity evidence involves a 'fundamental conception of justice'" which is violated by section 1108.  See LeMay, 260 F.3d at 1025.  He thus has not shown that section 1108, which allows propensity evidence in the limited area of sex offense cases, on its face violates due process.

Section 1108 also did not violate due process as it was applied in Perez's case.  The prosecutor offered evidence of Perez's crimes against Anita to show Perez's lewd intent regarding all three girls, and to show his propensity to commit sex crimes against pre-pubescent girls, as evidenced by the substantial similarities in the three cases.  The trial court rejected defense counsel's argument that the evidence should be excluded as highly inflammatory and unnecessary.

Cal. Ct. App. Opinion, pp. 12. The state appellate court found that the trial court had not abused its discretion in refusing to exclude the evidence under section 352. The events were not too remote in time because "the evidence showed an almost unceasing pattern of molestations of very young girls, beginning with the six-year-old-child [Perez] admitted molesting when he was a juvenile, and continuing through the molestations of [Anita], then [Arlynn] and finally his own daughter." Cal. Ct. App. Opinion, p. 13. The fact that the evidence showed he had not been punished for his uncharged offenses "may well be true; however, it is but one factor to be weighed" and many other factors favored admission. Id. at 13-14. "Given the high degree of similarity between the girls' ages, the relationships of their families to [Perez] and the furtiveness of the encounters, we cannot say the trial court abused its discretion in finding the evidence more probative than prejudicial." Id. at 14. Because the jury could draw from the evidence of Perez's prior sex offenses the permissible inferences that he had the propensity to commit sex offenses against pre-pubescent girls and did commit the sex offenses charged in the present case, the admission of the evidence that he had committed sex offenses against Anita did not violate Perez's right to due process. See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

A further reason Perez is not entitled to the writ is because he has not shown that the California Court of Appeal's rejection of his due process claim was contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the Ninth Circuit has recognized, there is not much in the way of clearly established law on the propensity evidence question. "[T]he Supreme Court has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes. Indeed, the Supreme Court has expressly declined to answer these questions, see Estelle [v. McGuire, 502 U.S. 62, 75 n.5 (1991)] ('Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of "prior crimes" evidence to show propensity to commit a charged crime')." Garceau v.

14

Woodford, 275 F.3d 769, 774-75 (9th Cir. 2001), reversed on other grounds by 538 U.S. 202 (2003).

C.  The Jury Instructions Regarding The Prior Sex Offenses

   1.  Background

Perez contends that his right to due process was violated because the jury instructions could have been understood by a jury to permit his conviction based solely upon the fact of his prior sex offense and without finding each fact necessary to support the conviction beyond a reasonable doubt.

The jury was given these instructions on the use of the prior sex offenses evidence:

> Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense other than that charged in the case. [¶] "Sexual offense" means a crime under the laws of a state or of the United States that involves any of the following: [¶] Any conduct made criminal by Penal Code Sections 261, 269, 286(c)(2), 288(a), 288(b)(1). The elements of these crimes are set forth elsewhere in these instructions. [¶] If you find that the defendant committed a prior sexual offense you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused. [¶] However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime. You must not consider this evidence for any other purpose.
>
> Within the meaning of the preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed a sexual offense other than those for which he is on trial. [¶] You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other sexual offense.

CT 467-468; CALJIC 2.50.01, CALJIC 2.50.1. The jury also was instructed on the preponderance of the evidence standard, CT 468, and was given the following standard reasonable doubt jury instruction:

> A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt. [¶] Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible

> or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.

CT 469; CALJIC 2.90.

The California Court of Appeal summarily rejected Perez's claim of instructional error, following the reasoning of People v. Reliford, 29 Cal. 4th 1007, 1009 (Cal. 2003), which had determined that the 1999 version of CALJIC No. 2.50.01 correctly stated the law. Ct. App. Opinion, p. 11. The Reliford court had found no reasonable likelihood under the instructions given that the jury would conclude it could convict appellant of the current offense solely because it found that he had committed a similar prior sexual offense. See Reliford, 29 Cal. 4th at 1015-16.

2.  Analysis

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle v. McGuire, 502 U.S. at 71-72. It is beyond dispute that the Fourteenth Amendment's Due Process Clause requires that a defendant be presumed innocent until proven guilty, that he may only be convicted upon a showing of proof beyond a reasonable doubt, and that the jury be properly instructed that a defendant is presumed innocent until proven guilty beyond a reasonable doubt. Gibson v. Ortiz, 387 F.3d 812, 820 (9th Cir. 2004) "Any jury instruction that 'reduce[s] the level of proof necessary for the Government to carry its burden . . . is plainly inconsistent with the constitutionally rooted presumption of innocence.'" Id. (quoting Cool v. United States, 409 U.S. 100, 104 (1972)). So long as the trial court instructs the jury on the necessity that defendant's guilt be proven beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. See Gibson, 387 F.3d at 825.

In reviewing an ambiguous instruction, the court must inquire whether a reasonable likelihood exists that the jury has applied the challenged instruction in a way that violates the

Constitution. See Estelle, 502 U.S. at 72 & n.4; Boyde v. California, 494 U.S. 370, 380 (1990).[4] A determination that there is a reasonable likelihood that the jury has applied the challenged instruction unconstitutionally establishes only that an error has occurred, however. See Calderon v. Coleman, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, see Brecht, 507 U.S. at 637, before granting habeas relief. See Calderon, 525 U.S. at 146-47.

The jury instructions given at Perez's trial did not incorrectly describe the burden of proof or permit conviction upon a standard less than proof beyond a reasonable doubt of every element of the charged crimes. One of the challenged instructions given in this case is a revised version of CALJIC 2.50.01 which includes the language: "if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes." When viewed in light of the other instructions given by the court, the revised CALJIC 2.50.01 given at Perez's trial made clear that even if the jury found that Perez committed a prior sexual offense by a preponderance of the evidence and drew the inference that he was likely to commit and did commit the crimes of which he was accused, that alone was not sufficient to prove beyond a reasonable doubt that he committed the charged crimes. There is no reasonable likelihood that the jury applied the challenged instructions to convict Perez based on a preponderance of the evidence or any standard below proof beyond a reasonable doubt.

The instructions used at Perez's trial were not the same as those determined to be constitutionally infirm in Gibson v. Ortiz, 387 F.3d 812. In Gibson, the jury was instructed with the pre-1999 version of CALJIC 2.50.01 which did not tell the jury that the inference it could draw from the prior sex offense was not enough to prove guilt on the charged crime beyond a reasonable doubt. The problem was compounded by the use of a modified version of CALJIC 2.50.1 that stated the preponderance of the evidence standard as the burden of proof for prior

---

[4]If the instruction describes the burden of proof incorrectly, rather than is merely ambiguous, the Estelle approach does not apply. See Gibson, 387 F.3d at 822 n.8. This is not a case of misdescription of the burden of proof.

17

sexual offenses. The "interplay of the two instructions allowed the jury to find that Gibson committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the <u>charged</u> acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence." <u>Id</u>. at 822. The <u>Gibson</u> instructions, carefully followed by the jury, would allow Gibson's conviction based on a finding made on the unconstitutionally low preponderance of the evidence standard. By contrast, Perez's jury instructions, carefully followed by the jury, would not permit Perez's conviction based on anything less than proof beyond a reasonable doubt of all elements of the crimes charged. The California Court of Appeal's rejection of Perez's claim was not contrary to or an unreasonable application of clearly established federal law. Perez is not entitled to the writ on this claim.

///

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall close the file.

**IT IS SO ORDERED.**

DATED:   September 19, 2005

_____
SUSAN ILLSTON
United States District Judge